Good morning, Your Honors. Jared A. Green, may it please the Court. Jared A. Green, on behalf of Appellant Bilal Yassin. And I'm also here with Neal Zaslavsky from my office and Mr. Yassin himself. Very well. And if I could reserve seven minutes and do the first eight minutes and reserve the seven, that would be great. You may do so. Just watch your clock. Thank you, Your Honor. This case is really about a post 9-11 improper secret investigation into a man who is Muslim, who is Arab, who had been here for 23 years without ever having committed a misdemeanor or a felony. And suddenly, apparently the FBI deemed it appropriate to open up an investigation into him. He would later learn in November of 2006 that the Department of Homeland Security was involved in the investigation. At that point, and only at that point in November of 2006, did his conspiracy claim possibly accrue. The equal protection claim had to have continued through the time of the prosecution because his equal protection claim was based on an incorrect and discriminatory prosecution. Well, as I understand it, you've conceded that the Fourth Amendment claim is time barred. Am I right? Concession is an interesting word. As close to concession as possible, yes. We can move on and focus on the other three claims, Your Honor. But yes, based on the case law demonstrated in the answering brief of the government, we thought it appears that the Fourth Amendment claim accrues at the time of the search, regardless of when the searchee learns of the motive of the search. And the Fifth Amendment due process claim, why isn't that waived? It's not waived because the words due process appear in the complaint in two different places. So respectfully to the FBI, that argument makes zero sense. It's in the complaint. You can't waive a claim that's in a complaint. Let me ask you directly about this question of timeliness. The criminal proceedings were initiated in 2005. And in January of 2006, your client filed a motion alleging that the prosecution was motivated by his race and nationality. So why wouldn't we have to conclude that he knew of everything that's relevant? That is, that he was being prosecuted allegedly on a wrongful basis by January of 2006, making his claims untimely. I think it's a great question, Judge Graber, and probably the most important question for the panel to hear. Here's the response. It's multifold. First of all, to the extent that it's relevant, he didn't file that motion. He simply joined in it. Another defendant filed it. That's not Does that make it not his allegation if he joins it? No, and that's really point 104 in increasing order of significance. So we can move on from that point. Second, the Murgia motion, it's important to understand, and Agent Coulter did not rebut this importantly in the answering brief, is a two-part motion in chronology. The first part is a motion for additional evidence to see if there is a basis for a discriminatory motive allegation. The second part of the motion, which can only be filed if the first part is granted by the court, is an actual allegation that discrimination occurred. He never even got to that point. In other contexts, for example, employment discrimination cases, it's enough for the approval of a statute of limitations that the person knows about the thing that happened to them. They don't even have to know it was discriminatory. And here, at least he suspects that it's discriminatory. Sure. Why doesn't that start the running of the statute? Again, good question. So I've made two of the four points, and the third one addresses more what you're getting at. The third one is, that, Your Honor, is a fact question that should be left to the jury. Was it enough by just joining in or filing, for that matter, a Murgia motion, part one, is that enough for a reasonable person to know that he was subjected to discrimination? It's a fact question, but even if he was. He said he was. I don't understand how you can say that he didn't believe that he had suffered discrimination, because he said he believed he suffered discrimination. What else is, what other fact is relevant? Here's the last point, and I understand what you're saying. Your questioning reflects, if you ultimately agree with the premise of your question, which I think and the Fourth Amendment claim were barred. Because let's be clear here. Assuming what you're saying is correct, which is he knew at the time that he filed the Murgia motion that he had a claim, even assuming that's true, that does not address the equal protection claim based on a discriminatory prosecution. Even if he knew it then, the prosecution continued until 2007, July 17, 2007. The only way that we could agree with you under the theory that I've proposed is that you view that as a continuing violation. No. To be clear, the equal protection claim is not a continuing. Well, so if the claim is that the prosecution is begun for discriminatory reasons, then isn't the time to look at, for the accrual of that claim, the time when the charges are filed? No. Under the four binding Ninth Circuit cases that we cited in our brief, it says that for a challenge to the constitutionality of the prosecution, it accrues the date that the final decision by the superior court or district court judge is made ending the prosecution. And I can point you to the page in the brief that we cite those cases. Apparently not with the speed at which I was hoping for. Ah, it's actually in the reply brief. That's why.  In the bottom of page 15 through page 16, these are a slew of Ninth Circuit cases holding that constitutional challenges to a prosecution accrue the date the trial court enters the judgment ending the prosecution. OK, so that's one point, Your Honor, to respond to your question. The second one is, even if the conspiracy claim accrued, so not talking about the equal protection prosecution claim right now, talking about the conspiracy claim, assuming for the moment it accrued at the time he filed that Murdia motion, now we get to your continuing violation or an additional overt act claim, which is there were additional overt acts which would extend the statute of limitations based on agent Coulter's withholding of material evidence in violation of a superior court order. It's hard to imagine a more clear example of an overt act in furtherance of a conspiracy than withholding the evidence that's relevant to the motive for the investigation in the first place. That being said, we still haven't talked about the due process claim. The due process claim turns again on the Brady violation, also addressed in the Tennyson decision by this court, which is a Brady violation supports a 1983 claim by a criminal defendant after the prosecution. Well, in that case, in Tennyson, we're applying that here, the Brady violation occurred during the prosecution, it occurred in 2007. That Brady violation, that Tennyson 1983 claim, therefore would accrue in 2009. I'm sorry, that's when the statute of limitations would expire. He filed his claim in 2008. Counsel, you are down to six and a half minutes. Okay. Six and a half minutes remaining. Yes. Thank you. I'm glad you were paying attention to the clock. I forgot it existed. Thank you, Your Honor. If I can hold the rest for rebuttal, I'd appreciate it. Mr. Dreeben, we'll hear from the government. Mr. Dreeben. Good morning, Your Honor, as I may please the court, Todd Pickles on behalf of FLE FBI Special Agent Chad Coulter. Your Honor, Judge O'Scanlan, in response to your question about waiver of the due process claim, it's this Brady claim that was just mentioned. In fact, it has been waived. If you look at the complaints, the first and the second or the original and amended complaint, nowhere will you see any reference to any withholding of information, Brady, anything along those lines. Indeed, to this date, the only ---- Your Honor, counsel said that the word due process was used several times. Is that enough? No, it's not, Your Honor. Simply asserting a broad constitutional principle does not support the legal claim which would fall within due process. Certainly, I think due process probably within the constitutional framework would be the broadest potential principle. At no point was Special Agent Coulter ever placed on notice that this was somehow a claim that was being pursued. Indeed, the only evidence that's ever been put forth before this court, Mr. Yaskin concedes, was not in the district court record, although he continues to cite to it in the reply brief. Therefore, it's been waived. Furthermore, even if the court were to consider it now at this late date, there simply is no basis for it in the record that would permit overturning the district court's decision. Let me be clear. This is an individual liability claim against Special Agent Coulter. At no point did Special Agent Coulter withhold any documents. To the extent there were any documents, they reside in the sole possession and authority of the Federal Bureau of Investigation. Only the FBI could release those records. If Special Agent Coulter were to have released them, it would have violated both FBI policies and federal law. And to this date, despite the fact that we have actually put the records in the district court record, Mr. Yaskin has never pointed to any evidence showing it somehow was critical to the accrual of claims or, in fact, was exculpatory within the meaning of Brady. Judge Graber, in response to your questions about whether or not the merger motion would have been a date of accrual, I think, in fact, under the Lakofsky case and under the other authorities cited, Knox, in fact, the claim accrued at the time of the institution of the criminal prosecution in February or April, however you want to look at that, 2005, though certainly by the time he files a merger motion or joins a merger motion attacking the prosecution as being discriminatory, at that point, there can be no question there was at least a reasonable basis for him to have assumed it. And if you actually look within the complaint that was filed by Mr. Yaskin at ER 30, he references the merger motion as a challenge to the prosecution on the basis that it was discriminatory. There's no suggestion. Somehow, it was merely a discovery vehicle, and there was no basis for it. With respect to the issue of a continuing violation, the continuing effects are really what Mr. Yaskin continues to complain about, this court and Knox. Well, I think what he's maybe referring to, I haven't gone back to look at it, but there's a series of malicious prosecution cases that say that there's no accrual till the prosecution ends. And that's logical, because the only way you can succeed is by proving as an element that you were acquitted. But that logic might or might not apply here. What's your thought on that? It doesn't. Your Honor is exactly right. The cases to which Mr. Yaskin cites, the Klein case, the Morales case, those cases talk about a malicious prosecution claim, which is a certain species of claims with certain requirements. Nothing in the below was ever mentioned of some kind of malicious prosecution. Certainly, you look at the complaint, there's no mention of it, nor any of the elements, nor was any evidence produced below that would support it. In fact, the first element, or one of the basic elements of malicious prosecution in the Awabdi case, which has been cited by Mr. Yaskin, is that there's been some kind of resolution on the merits suggesting innocence. And in this case, we have the exact opposite. The district court, when it dismissed the state prosecution, said, I'm not making a determination of innocence or guilt, and I'm not making a determination whether or not there was discriminatory motive. There was no reference to the merits at all. And so not only was a malicious prosecution claim never made, the theory by which that can be pursued doesn't apply to the facts of this case. Your Honor, with respect to the issue of the due process claim, equal protection claim, I think we've just addressed that, Your Honor. It accrued at the date that the prosecution commenced, and that's consistent with the R.K. Ventures case and the other cases we cited. And under the overall framework of Levkovsky, which says we look at the actual injury and not the suspected illegal motivation. And I do note, Your Honor, that when we get back to this idea of illegal motivation, being it race and religion, the only evidence to which Mr. Yaskin has ever cited is the evidence that on the day that he was arrested, he was questioned about donations to the mosque, his Muslim religion, his ties to other Middle Eastern shopkeepers, his immigration status. First, there's no allegation that that's by Special Agent Coulter and as an individual liability claim. In a way, that's irrelevant. But second, that evidence occurred at the time of the arrest, not in November of 2006. And the district court, contrary to what Mr. Yaskin has argued, cited to Mr. Yaskin's own declaration, in its opinion, finding that the cruel date was at the time of his arrest and the institution of the prosecution. Finally, Your Honors, I did want to make one clarification for the record. I realized in preparing for argument that when I filed my Rule 28J letter, I cited to the Guerrero versus Gates case. I cited mistakenly to the superseded decision and not the superseding decision in 2006. The proposition remains the same and that is to assert equitable estoppel or fraudulent concealment, you need to plead facts with particularity in the complaint. Certainly, that wasn't done here. But obviously, I should have cited the court to the more recent decision. And I'll give the court that citation just to correct my error. It's 442 F3rd 697 and the- Counsel, would you provide that citation on the gum sheets you'll get from the deputy clerk and serve three copies here and one to your opposing counsel? I will, Your Honor. Thank you. At this point, I believe I've addressed at least the arguments that have been raised. At this point, I don't, unless the court has any further questions, I'm prepared to submit on the papers. No further questions. Thank you, Your Honor. Mr. Green, you have some reserve time. Thank you. Judge Graber, one point that I wanted to mention in response to your question about the Merguia motion and whether or not that was sufficient to trigger in the mind of any reasonable person, what about the statement on July 7, 2007, after the Merguia motion by the district attorney to the superior court saying there's no evidence whatsoever of a discriminatory investigation? Isn't that statement alone sufficient to say that a reasonable person could claim that there is no evidence upon which a 1983 claim is based? I would say that if anyone is a reasonable person under our standards, it would have to be a district attorney. That's one point that I think is important to address. And I think that is for the jury to decide. A few other additional points is your position that the statute of limitations is equitably told or equitably stopped because a defendant denies liability? No. Thank you.  It's that the statute of limitations is told until a reasonable person knew or should have known. And the fact that the DA was claiming that there was no evidence, I believe is relevant evidence as to whether or not he knew or should have known if there was a claim. That was an opinion of the district attorney as to what was relevant evidence. If he was represented as he was, why would he believe the district attorney? Why what? Why would he believe the district attorney? Why would a reasonable person prosecuting a lawsuit rely on a representation by opposing counsel that there was no reasonable evidence? Again, there's a conflation here. It's not an issue of reliance or belief. It's an issue of whether or not two different people in our society who are reasonably minded could reach a different conclusion on the same set of facts. So let's be clear. Unless the DA was absolutely making a false representation to a court, that's a very serious statement to say there's no evidence to even support a Murgia motion for evidence. It was not a Murgia motion, let's be clear, not a Murgia motion claiming that there was discrimination. He was saying that there does not even justify a basis for receiving, giving the defendant evidence of what the motive was. That's a – that is a representation he made to the court. And respectfully, that is relevant to whether or not a reasonable person would believe he had a claim. Again, though, back to the – and I only have three and a half minutes – back to the equal protection claim, which Agent Coulter simply cannot get around, the Owabde case, which we cited, was an example of a case where a police officer in just 2004, the Ninth Circuit held, against an Arab man also, found that the – even though the investigation was only committed by the officer, and an officer cannot prosecute, but the prosecution that resulted from the officer's discriminatory investigation itself creates a prosecution-based claim against the investigating officer. And we cited numerous cases at the reply brief at pages 11 to 12 that shows that if the investigating officer withholds material evidence from the prosecutor and that material evidence would have impaired – if it impaired the prosecutor's ability to make – to exercise his discretion, that that creates a claim against the officer based on the prosecution. That's precisely what Mr. Yastin has alleged here. Just a few more points. The claim that Mr. Pickles made about it's the FBI that holds the documents and not Agent Coulter, first of all, has to be immediately struck, and it was not in the answering brief. You can't make a new critical argument right here. Second of all, it was – that's entirely inconsistent with the record. The superior court order expressly finds that he withheld this evidence when requested. So the evidence is clear that – and various other items in the record that we cite, including the DA's statements under – you know, to the court, that the DA specifically called Agent Coulter, and Agent Coulter refused to return the calls. Let's just be clear, it is Agent Coulter who refused, but in any event, he was sued in his professional capacity, and that's on behalf of the FBI anyway. One minute, 20 seconds. I have to say, I was particularly disturbed by the fact that there was a 21-page copy-and-paste job. I understand that district courts are very busy, but as we demonstrated in the opening brief and the reply brief, the district court's entire opinion of 21 pages was a copy-and-paste of Mr. Pickles' good brief. It was a good brief, but it was a copy-and-paste. Now, that could happen, perhaps, on a motion to dismiss, perhaps, I guess, maybe an issue of pure law. But on a motion for summary judgment, when the moving party's brief is copied and pasted, including the seven pages of facts, there is something very problematic about that, because I would argue that, per se, that is a failure to interpret all evidence in a light most favorable to the nonmoving party. How can you interpret evidence in favor of a nonmoving party if you don't even mention any of their evidence? I find that extremely troubling, and it somewhat supports the reasons why the court reached misguided legal conclusions on the three causes of action at issue. Thank you, Your Honors. Thank you, Counsel. The case just argued will be submitted for decision.
judges: O'scannlain, Graber, Bea, Cjj